# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TRUSTEES OF THE NATIONAL ASBESTOS WORKERS MEDICAL FUND ET AL., | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Case No.: TDC-18-1911 |
| WRAP IT UP CONSTRUCTION, LLC, | * * * |
| Defendant. | * * |

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses the Motion for Default Judgment (ECF No. 10, as revised by ECF No. 14) filed by the Plaintiffs, Trustees of the National Asbestos Workers Medical Fund (the "Medical Fund") and Trustees of the National Asbestos Workers Pension Fund (the "Pension Fund") (collectively the "Funds") against Defendant Wrap It Up Construction, LLC ("Defendant"). [ECF Nos. 10, 14]. The Defendant has not filed an opposition, and its deadline has now passed. On September 10, 2018, Judge Chuang referred this case to me to review Plaintiffs' motion and to make recommendations concerning damages. [ECF No. 12]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons discussed below, I recommend that Plaintiffs' revised motion be GRANTED, that damages be awarded as set forth herein, and that this case be CLOSED.

I. **BACKGROUND**

The Plaintiffs in this action are two trustees of multiemployer plans, under the Employee Retirement Income Security Act ("ERISA"). Am. Compl. ¶ 2. The Defendant currently

employs, and has employed, individuals who are represented by the Asbestos Workers Local Union No. 46 ("the Union"). Am. Compl. ¶¶ 2-3, 6. On April 30, 2017, the Defendant entered into a Collective Bargaining Agreement ("CBA") with the Union. Pls.'s Revised Mot. Ex. B. The CBA requires the Defendant to contribute fixed amounts "for each employee and transmit [the amounts] in his/her name to the National Asbestos Workers Medical Fund and the National Asbestos Workers Pension Fund" (collectively "the Funds"). *Id.*

The CBA also binds the Defendant to the terms and conditions of several Declarations of Trust ("Trust Agreements"). Pls.'s Revised Mot. Exs. B, C, D.[1] The Trust Agreements require the Defendant to submit monthly contribution payments and contribution reports, which identify the employees for whom payments have been made and the hours that the employees worked. Pls.'s Revised Mot. Exs. C, D. The Trust Agreements state that if the employer fails to submit timely contributions and contribution reports to the Funds, liquidated damages will be assessed in an amount equal to the greater of $20 per delinquency or 20% of the amount of the contribution or contributions due. *See id.* The Medical Fund Trust Agreement allows Plaintiffs to assess the rate of interest upon the employer's failure to promptly submit contributions at 1 ½% per month. Pls.'s Revised Mot. Ex. C. The Pension Fund Trust Agreement allows Plaintiffs to assess the rate of interest at 8% per annum or double interest, as provided in the Employment Retirement Income Security Act of 1974 ("ERISA"). Pls.'s Revised Mot. Ex. D.

The Trust Agreements further require the employer to permit a "qualified representative to conduct an audit of the payroll, wage and other records of any Employer to permit the Trustees to determine whether such Employer is making full payments to the Fund in the amounts required by the Collective Bargaining Agreement." Pls.'s Revised Mot. Exs. C, D. If

---

[1] The Trust Agreements for the Medical Fund and Pension Fund share nearly identical provisions pertaining to the power of the Board of Trustees to enforce individual employer payments.

the Board of Trustees files suit against the employer for a delinquency owed to the Funds, the Trust Agreements provide that the employer in default must pay "[a]ll reasonable expenses incurred by the Fund in enforcing the payment of contributions and other amounts due, including but not limited to, reasonable attorneys' fees, accountants' or auditor's fees, as provided in this Trust, and court costs shall be added to the obligation of the defaulting Employer in addition to the amount of contributions due and the liquidated damages and interest provided for above." *Id.*

On June 25, 2018, the Plaintiffs filed suit against the Defendant for the Defendant's failure to comply with the terms of the CBA and Trust Agreements. Am. Compl. ¶¶ 4-14. Defendant failed to respond to Plaintiffs' Complaint. On August 30, 2018, Plaintiffs filed a Motion for Entry of Default with the Clerk's Office, which was granted on September 6, 2018. [ECF Nos. 9, 11]. The instant motion followed, and was revised on September 28, 2018, following an inquiry from this Court. [ECF Nos. 10, 13, 14]. The Plaintiffs allege that Defendant failed to pay complete contributions to the Funds in the amount of $66,436.30 for work performed during the months December 2017 and January 2018. Pls.'s Revised Mot. ¶ 1. The Plaintiffs also allege that Defendant untimely submitted its contribution payments for work performed during the months of August, 2017, through February, 2018, resulting in an assessment of $18,504.41 in liquidated damages and $12,260.18 in interest. Compl. ¶¶ 9-14; Pls.'s Revised Mot. ¶ 2. The Plaintiffs also seek attorneys' fees and costs in the amount of $2,302.50. Pls.'s Revised Mot. ¶ 3.

## II. STANDARD OF REVIEW

In reviewing the Plaintiffs' Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine

whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See, e.g.*, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See, e.g.*, *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest

the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, (1) the court must determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages.

### III. DISCUSSION

#### A. Defendant's Liability

The Plaintiffs have brought this suit pursuant to § 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185. Section 301 of the LMRA provides in relevant part that:

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. 185(a). "Employee benefit trust funds and fund trustees have standing to sue under section 185(a) as third-party beneficiaries of a collective bargaining agreement." *Int'l Painters & Allied Trade Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013). As Trustees to the Funds, Plaintiffs have standing to sue.

Plaintiffs also bring suit pursuant to §§ 502 and 515 of the Employment Retirement Income Security Act of 1974 ("ERISA"). Sections 502 and 515 of ERISA govern the enforcement of employer contributions to employee pension and welfare trust funds. *See* 29 U.S.C. §§ 1132(g), 1145; *Trs. of Glaziers Local 963 Pension, Welfare, and Apprentice Funds v. Walker & Laberge Co., Inc.*, 619 F. Supp. 1402, 1403 (D. Md. 1985). Section 515 requires employers who are obligated to make contribution payments to a multiemployer plan or

5

collectively bargained agreement to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Where the plan prevails in an action to enforce § 1145, Section 502(g) requires courts to award the plan unpaid contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees, and other legal or equitable relief as the court deems appropriate. *See* 29 U.S.C. § 1132(g)(2). Taking the well-plead factual allegations in the Complaint as true, the Plaintiffs have established that the Defendant was a party to the CBA, and is in breach of the CBA and Trust Agreements by virtue of its failure to comply with the terms and conditions governing employer contributions to the Funds. Accordingly, the Plaintiffs have asserted a valid cause of action, and are entitled to damages pursuant to § 502(g). On that basis, I recommend that Plaintiffs' Motion for Default Judgment be granted.

### B. Damages

ERISA permits Plaintiffs to recover unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty percent of the amount of the unpaid contributions, reasonable attorneys' fees and costs, and other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2)(A)-(E). The damages that the Plaintiffs assert at this time are: (1) the unpaid contribution payments for December, 2017, and January, 2018; (2) damages arising from the untimely submission of the August, 2017, through February, 2018, contribution payments; and (3) attorneys' fees and costs. Each category of damages is addressed in turn.

#### 1. Unpaid Contribution Payments for December, 2017, and January, 2018

The Plaintiffs claim a total of $66,436.30 in unpaid contributions for the months of December, 2017, and January, 2018. Pls.'s Revised Mot. ¶ 1. Attached to Plaintiffs' Revised

Motion are breakdowns of the amount of medical and pension contributions owed to and received by the Funds for the months of August, 2017, through February, 2018. Pls.'s Revised Mot. Exs. E, F. The breakdown for the Medical Fund indicates that, for the work month of December, 2017, Defendant paid $10,783.37 in medical contributions on June 13, 2018, with $9,202.33 still owed. Pls.'s Revised Mot. Ex. E. For the work month of January, 2018, the Medical Fund breakdown indicates that Defendant paid no medical contributions, with $17,465.23 still owed. *Id.*

The breakdown for the Pension Fund indicates that, for the work month of December, 2017, Defendant paid no pension contributions, with $21,222.60 still owed. Pls.'s Revised Mot. Ex. F. For the work month of January, 2018, the breakdown indicates that Defendant paid no pension contributions, with $18,546.14 still owed. *Id.*

I have reviewed the evidence submitted by the Plaintiffs, and I find that their calculations are correct. Accordingly, I recommend that the Court award the Plaintiffs $66,436.30 in unpaid contributions.

### 2. Liquidated Damages and Interest for the Defendant's Untimely Contribution Payments for August, 2017, through February, 2018

The Revised Declaration of Reneé Parenti ("Revised Parenti Declaration"), Administrative Agent for the Funds, provides that the Defendant untimely submitted its contribution payments for the months of August, 2017, through February, 2018. Pls.'s Revised Mot. Ex. A. Pursuant to the Trust Agreements, contribution payments "are due on the fifteenth (15th) day following the end of each calendar month." Pls.'s Revised Mot. Exs. C, D. Attached to the Revised Parenti Declaration are breakdowns of the contributions due to Plaintiffs, and an assessment of liquidated damages and interest. Pls.'s Revised Mot. Exs. E, F. The breakdowns show that the Funds received untimely contributions for the months of August, 2017, through

7

November, 2017, and February, 2018, and that the Funds have not yet received complete contribution payments for December, 2017, and January, 2018. *Id.*

The Plaintiffs seek an award of $6,711.30 in interest assessed on the late payments to the Medical Fund for the months of August, 2017, through January, 2018. Pls.'s Revised Mot. Ex. E. The Trust Agreement for the Medical Fund expressly allows the Plaintiffs to assess interest at 1 ½ % per month. Pls.'s Revised Mot. Ex. C. The Plaintiffs also seek an award of $18,504.41 in liquidated damages and $5,548.88 in interest assessed on the late payments to the Pension Fund for the months of August, 2017, through February, 2018. Pls.'s Revised Mot. Ex. F. The Trust Agreement for the Pension Fund expressly allows the Plaintiffs to assess 20% of the contribution amount due or $20.00, whichever is greater, as liquidated damages, and interest at 8% per annum or double interest as provided in ERISA. Pls.'s Mot. Ex. D.

I have reviewed the evidence submitted by the Plaintiffs, and I find that their calculations are correct. Accordingly, I recommend that the Court award Plaintiffs $18,504.41 in liquidated damages and $12,260.18 in interest.

### 3. Attorneys' Fees and Costs

The Plaintiffs claim a total of $2,302.50 in attorneys' fees and costs. Specifically, the Plaintiffs request a total of $625.00 in costs for the civil filing fee ($400.00) and the private process server fees ($225.00). Pls.'s Revised Mot. Exs. G, H, I. The costs are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients, and I recommend that $625.00 be awarded. The Plaintiffs also request a total of $1,677.50 in fees, reflecting a total of 11 hours of time billed by both Plaintiffs' counsel, Charles W. Gilligan, and a paralegal working under Mr. Gilligan's supervision. Pls.'s Revised Mot. Exs. G, H.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. HUD*, MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (citing *Johnson*, 488 F.2d at 717-19).

Counsel for the Plaintiffs, Charles W. Gilligan, has been admitted to practice for approximately thirty-two years, and bills at an hourly rate of $250.00 per hour. Pls.'s Revised Mot. Exs. G, H. This Court's Guidelines for Determining Attorneys' Fees in Certain Cases ("Guidelines") provides that lawyers admitted to the bar for twenty years or more may reasonably bill from $300.00 to $475.00. Local Rule App'x B (3)(e) (D. Md. 2016). These Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees." Local Rule App'x B n.6 (D. Md. 2016). Mr. Gilligan's hourly rate of $250.00 falls below the Guidelines range of $300.00 to $475.00 for a lawyer with his experience. Thus, I find Mr. Gilligan's rate to be reasonable. The paralegal working under Mr. Gilligan's supervision, Teresa Butler, has been employed as a paralegal for approximately thirty-three years, and bills at an hourly rate of $140.00. Pls.'s Revised Mot. Exs. G, H. The Guidelines provide that paralegals and law clerks may reasonably bill from $95.00 to $150.00. Local Rule App'x B (3)(f) (D. Md. 2016). Ms. Butler's hourly rate falls within the Guidelines range. Thus, I find Ms. Butler's rate to be reasonable.

However, I do not find the total number of hours expended reasonable. Plaintiffs' original motion contained inaccurate calculations, which Plaintiffs remedied after an inquiry from this Court. [ECF Nos. 10, 13, 14]. The billing records demonstrate that, in response to this Court's order requiring further evidentiary support, Ms. Butler billed an additional three hours and Mr. Gilligan billed an additional half hour. Pls.'s Revised Mot. Exs. G, H. I will not require Defendant to compensate Plaintiffs for time expended as a result of Plaintiffs' own administrative errors. For these reasons, I recommend a reduction of the total number of hours expended from 11 to 7.5, which results in a fee assessment of $1,132.50, plus $625.00 in costs.

The reduced fee assessment of $1,132.50 constitutes a reasonable fee for several reasons. First, the 7.5 hours worked and billed appear reasonable, and the vast majority of the work was done by a paralegal with appropriate attorney supervision. Second, as explained above, the rates charged for Mr. Gilligan's and Ms. Butler's time are lower than those permitted by the guidelines. Finally, as adjusted, the total appears to be well within, and in fact below, the range of fees and costs awarded in similar cases in this district. *See, e.g.*, *Plumbers & Steamfitters Local 486 Pension Fund v. RLS Heating, Air Conditioning, & Refrigeration, LLC*, Civil No. WDQ-10-2716, 2010 WL 5391450 (D. Md. Dec. 22, 2010) (recommending an award of $5,845.75 in fees and costs). For those reasons, I recommend an award of fees and costs in the total amount of $1,757.50.

**Conclusion**

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT the Plaintiffs' Motion for Entry of Default Judgment (ECF No. 10, as revised by ECF No. 14);

2. the Court award the Plaintiffs $66,436.30 in unpaid contributions;

3. the Court award the Plaintiffs $18,504.41 in liquidated damages and $12,260.18 in interest;

4. the Court award the Plaintiffs $1,132.50 in attorneys' fees and $625.00 in costs;

5. the Court award the Plaintiffs post-judgment interest at the statutory rate; and

6. order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**Notice to Parties**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: October 25, 2018                            /s/
                                                                         Stephanie A. Gallagher
                                                                         United States Magistrate Judge